IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DAVID CZAPIEWSKI,

                                           OPINION and ORDER

                    Plaintiff,

                                           07-cv-549-bbc

     v.

BYRAN BARTOW, AMY FREEMAN and
SARAH DONOVAN,

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is a civil action brought pursuant to 42 U.S.C. § 1983 involving the rights of inmates to speak confidentially with their attorneys in a prison setting. Plaintiff David Czapiewski contends that, while he was confined at the Wisconsin Resource Center, defendants Amy Freeman and Sarah Donovan violated his First Amendment rights by requiring him to receive a phone call from his attorney in their office. Defendant Bartow is named as a defendant because plaintiff contends that he failed to properly train defendants Bartow and Freeman to prevent this type of incident.

Now before the court is defendants' motion for summary judgment, in support of which they argue that requiring plaintiff to take his attorney's phone call in their office was reasonably related to a legitimate penological interest under Turner v. Safley, 482 U.S. 78,

1

98 (1987), and in the alternative, that they are entitled to qualified immunity. Because the Wisconsin Resource Center had a policy allowing inmates to set up outgoing attorney calls in privacy and plaintiff has failed to adduce evidence that he could not have taken advantage of that policy, defendants' informal policy of requiring inmates to take incoming calls in their office is valid under Turner and defendants' motion for summary judgment will be granted on that ground.

I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

### A. Parties

Plaintiff David Czapiewski is confined at the Waupun Correctional Institution in Waupun, Wisconsin, but from February to at least March, 2007, plaintiff was confined at the Wisconsin Resource Center.

Defendant Byran Bartow has been employed by the Department of Health and Family Services as the institution superintendent since March 26, 2000.

Defendant Amy Freeman has been employed by the Wisconsin Department of Health and Family Services as a social worker at the Wisconsin Resource Center since April 9, 2001. She was plaintiff's assigned social worker from February 6, 2007 to February 19, 2007.

Defendant Sarah Donovan has been employed by the Wisconsin Department of Health and Family Services as a psychological associate at the Wisconsin Resource Center

since December 5, 2002. She was plaintiff's assigned psychological associate from February 6, 2007 to March 15, 2007.

### B. Plaintiff's Phone Call with His Attorney

Plaintiff was confined at the Wisconsin Resource Center from at least January to March 2007. While he was there, plaintiff wanted his court-appointed to pursue a criminal appeal, arguing that he should have been found not guilty by reason of mental disease or defect.

In advance of preparing his appeal, plaintiff's attorney hired an expert to evaluate plaintiff's mental health. Plaintiff's attorney told plaintiff in two separate letters that he would arrange a phone conference with plaintiff after plaintiff was evaluated. Plaintiff's attorney did not specify a date or time for arranging the conference. When he did arrange a phone conference, he did so with defendant Freeman.

On the unit to which plaintiff was assigned at the time, one room is used for private attorney calls. The room is shared by multiple units and is often reserved by other staff. When inmates use the private room, staff must wait outside the room throughout the call to monitor the inmate's behavior. Because some attorney calls can last more than an hour, defendant Freeman prefers to schedule calls to be made to her office for those inmates to whom she is assigned. That way she can continue to work throughout the duration of the call instead of having to wait outside the private room to monitor the inmate. If inmates to

3

whom defendant Freeman is assigned do not request privacy during a phone call by submitting a "Telephone Request Attorney Add/Delete form," it is customary for her to ask the inmate and his counsel whether either of them objects to her working in her office at the time the telephone call takes place. She tries to be as unobtrusive as possible during the phone call. Inmates are not left alone in standard offices such as defendant Freeman's for phone calls.

On February 14, 2007, defendant Freeman told plaintiff that his attorney would be calling in to speak with him that day at 11:00 a.m, and the phone call would be conducted in her office, which she shares with defendant Donovan. Neither defendant Freeman nor defendant Donovan made any effort to allow plaintiff privacy during his phone call. Both defendants have made it a regular practice to take inmate calls in their office and remain in the room during the inmate's conversation with his attorney on the phone. Defendants Freeman's and Donovan's office measures slightly less than 12 feet by 13 feet. In the office, defendant Freeman's chair is about 4 or 5 feet away from the phone and defendant Donovan's chair is about 3 or 4 feet away. (The parties dispute whether plaintiff agreed to take the call in her or defendant Donovan's presence. According to defendants, one week before the phone call occurred between plaintiff and his attorney, defendant Freeman asked both of them whether she could remain in her office while the call took place. According to plaintiff, he did not learn about the phone call until 9:00 a.m. on the day of the phone call and shortly after he learned about it, he asked defendant Freeman to take the call in privacy

4

but she responded: "[d]on't worry, we won't be listening. This is all proper procedure, don't worry.")

Plaintiff's attorney called as planned. Although defendant Freeman does not recall exactly what occurred when he called, it is her standard practice to answer the phone, hand the receiver to the inmate and resume the work she had been doing before answering the phone. (The parties dispute whether defendants Freeman and Donovan actively listened to and recorded plaintiff's call. According to plaintiff, they did. He avers that both stopped typing and looked directly at him about ten minutes into the call when he mentioned the name of another psychologist at the Wisconsin Resource Center. Even after they looked away, neither defendant resumed typing. Later, defendants Freeman and Donovan discussed the content of plaintiff's conversation with his attorney in their reports, with Freeman writing "[plaintiff] became quite agitated as his claim [for not guilty by reason of insanity] was not being supported" and Donovan writing "[plaintiff] was discussing his ability to plead not guilty by reason of insanity with his lawyer.")

During the phone call, when plaintiff came to believe that defendants Freeman and Donovan were listening to his conversation, he tried to communicate with his attorney in "code." His attorney did not understand plaintiff and communication between the two broke down. After about thirty minutes of attempting to speak in code with his attorney, plaintiff became angry and loud and started making vaguely threatening statements. Hearing this, defendant Freeman told plaintiff to end his call, after which plaintiff's anger

5

escalated and he barricaded himself inside the office and damaged property before the incident was resolved.

C. Attorney Phone Call Policies at the Wisconsin Resource Center

Defendant Bartow's job responsibilities as superintendent of the Wisconsin Resource Center include directing the implementation of policies and procedures to manage the facility that are consistent with the policies of the Department of Corrections, state statutes and federal regulations, and enforcing the regulations of the Department of Health and Family Services for the administration of the Wisconsin Resource Center. Defendant Bartow maintained a policy requiring inmates to fill out a special form to receive privacy during calls they wished to make to their attorneys. The Wisconsin Resource Center Policy and Procedure Number 5.4.3-I sets out this policy under a heading titled "Telephone Calls to Attorneys":

> 1. Inmates may call attorneys regarding legal matters with the permission of the appropriate unit staff member (inmate's Social Worker, Unit Manager, Psychiatric Care Supervisor [PCS]). Such calls may be made regardless of the inmate's security status.
>
> 2. An inmate's telephone calls to an attorney are not subject to the maximum limit in number, and an attorney's name need not be on the inmate's approved visiting list.
>
> 3. An inmate's telephone calls to an attorney shall be made collect unless payments from the inmate's general account is approved and arranged by his Social Worker. (See "Time and Charges" procedure.)

    4. Unit staff (inmate's Social Worker, Unit Manager, PCS) may give permission for calls to attorneys for the following reasons:

    A. To allow an inmate to return a call from an attorney;
    B. When there is a statutory time limit that would be missed and the inmate needs to convey information to the attorney;
    C. When it appears to staff that a call to an attorney is in the best interest of the inmate;
    D. When an inmate is unable to write; or
    E. When an emergency exists.

5. Calls to attorneys from unit phones will be placed by staff, but after verification of the identity of an attorney or legal representative, legal calls shall be as private and unmonitored as possible.

**Note: For privacy during attorney calls, inmates must complete and submit to their unit social worker a Telephone Request Attorney Add/Delete form.**

(Emphasis in original.) Staff use the form required for outgoing calls to lawyers to verify the information included in the form, including the attorney's name, firm, telephone number, and active case number before allowing an inmate to make the call. When an inmate does not fill out the proper form, staff may remain in the room during a call.

    The Wisconsin Resource Center Inmate Handbook warns inmates that their phone calls may be monitored and will be recorded, "with the exception of approved and authorized properly placed attorney calls." According to Department of Corrections regulations, a telephone call to an attorney is "properly placed" if it is "placed in compliance" with the regulations and the procedures of the institution. Wis. Admin. Code § DOC 309.39(2)(d).

    Plaintiff did not submit a Telephone Request Attorney Add/Delete form to defendant

7

Freeman to request privacy during the phone call from his attorney.

OPINION

Plaintiff contends that he had a First Amendment right to speak in privacy with his attorney and that defendants Freeman and Donovan violated that right by requiring him to take his attorney's February 14, 2007 phone call in their office with them in the room. The Court of Appeals for the Seventh Circuit has held that there is a First Amendment right to confidential attorney-client communications. Denius v. Dunlap, 209 F.3d 944, 953-55 (7th Cir. 2000) (establishing that right to confidential communications with attorney is protected by First Amendment's guarantee of freedom of speech, association and petition). Defendants do not deny that the right identified in Denius remains available to prisoners, as plaintiff contends it does. Instead, defendants move straight to Turner v. Safley, 482 U.S. 78, 98 (1987), which established that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." According to defendants, their decision to require that plaintiff speak to his attorney in their office with them present was valid under Turner.

The Turner test involves four factors: (1) whether there is a "valid, rational connection" between the restriction and a legitimate governmental interest; (2) whether the prisoner retains alternatives for exercising the right; (3) the impact that accommodation of the right will have on prison administration; and (4) whether there are other ways that

8

prison officials can achieve the same goals without encroaching on the right. Courts have acknowledged that these factors tend to blend together and are not meant to be weighed according to any precise formula. Waterman v. Farmer, 183 F.3d 208 (3d Cir. 1999); Amatel v. Reno, 156 F.3d 192 (D.C. Cir 1998); Aiello v. Litscher, 104 F. Supp. 2d 1068, 1075 (W.D. Wis. 2000). The Turner test governs judicial review of specific applications of prison regulations as well as facial challenges. Shaw v. Murphy, 532 U.S. 223 (2001).

Prison officials have the initial burden to show a logical connection between the restriction and their legitimate interest. Beard v. Banks, 126 S. Ct 2572, 2581 (2006) ("Turner requires prison authorities to show more than a formalistic logical connection between a regulation and a penological objective."); King v. Federal Bureau of Prisons, 415 F.3d 634, 639 (7th Cir. 2005) ("the government must present some evidence to show that the restriction is justified"). A failure to do so makes it unnecessary to consider the remaining factors because an illogical free speech restriction is always invalid. Salahuddin v. Goord, 467 F.3d 263, 274 (2d Cir. 2006) ("The first Turner 'factor' is more properly labeled an 'element' because it is not simply a consideration to be weighed but rather an essential requirement.") (citing Turner, 482 U.S. at 89, and O'Lone v. Estate of Shabazz, 482 U.S. 342, 350 (1987)).

Defendants do not dispute that they had an informal policy that apparently required inmates receiving incoming calls to do so in their cramped office; however, they contend that this informal policy is based on their interests in security and saving staff resources, both of

9

which are considered "legitimate" government interests. Lindell v. Frank, 377 F.3d 655, 659 (7th Cir. 2004). I agree, although the overall interest in refusing to afford privacy to an inmate in plaintiff's situation is weak. To the extent plaintiff is complaining that defendants did not leave him alone in their office, there is a strong security interest in refusing to allow inmates to be left alone in the offices of staff, even if staff are watching from outside the room.

However, as plaintiff points out, there is another option. Plaintiff could have been sent to a private room to receive the call. Defendants identify two interests they claim were achieved by refusing to place him in a private room. The first one is the security interest they achieve by requiring prisoners to fill out a form before being afforded privacy because it allows them to first verify the identity of attorneys. It is questionable whether there exists such a need to verify the attorney's identity in circumstances such as plaintiff's, where the attorney had scheduled the call in advance with plaintiff's social worker and where she received the incoming call before handing the phone to plaintiff. Even assuming such a need, defendants cannot show any logical connection between their policy, which required inmates to fill out forms for *outgoing* calls, and their refusal to put him in a private room for *incoming* calls. Defendants have offered no evidence that incoming calls have a similar form requirement; indeed, they point to no policy at all that addresses incoming calls, except the informal policy about which plaintiff complains.

This leaves defendants with their interest in saving staff resources. According to

10

defendants, they were able to save resources by refusing to place prisoners such as plaintiff in private rooms because placement in private rooms requires someone to stand outside the private room for the duration of the phone call instead of being able to do office work. I question how efficiently their office work is performed when an inmate to whom they are assigned is three to five feet away speaking to an attorney on a phone. Nevertheless, some work is better than none, which means that defendants have established a logical relationship between a legitimate interest and their decision to refuse plaintiff privacy, however weak that interest might be.

Plaintiff's claim falls down on the second Turner factor because he had an easy alternative for exercising his right to confidential communications. It is undisputed that inmates may receive privacy during attorney phone calls by filling out a proper form that allows defendants to verify the identity of the attorney. Plaintiff stresses that his call was an incoming one and that he was not told about the call or its arrangement until the day of the call, suggesting that he was "forced" into taking the call as it was offered to him. However, there is no evidence that plaintiff was "forced" to take the incoming call or that the outgoing call procedure was not available to him. Regardless whether plaintiff had only short notice before the incoming phone call, there is no evidence to suggest that he could not have filled out a form to make an outgoing call *instead* of the incoming call scheduled, either at the scheduled time or at a later time to account for the short notice he was given. Because plaintiff bears the ultimate burden of persuasion, Jackson v. Frank, 509 F.3d 389,

11

391 (7th Cir. 2007) (citing Overton v. Bazzetta, 539 U.S. 126, 132 (2003)), his failure to offer any evidence that the outgoing call policy was not available to him under his circumstances is fatal to his claim.

Nor can the final two factors save plaintiff's claim from this fate. Although it is likely that defendants could accommodate the right to confidential communications for incoming attorney calls with little "ripple effect" while still addressing their security and efficiency concerns, this does not save plaintiff's claim. As flimsy as defendants' interests were for declining to offer a private room to plaintiff, his apparent failure to take advantage of the alternative method is more problematic.

Under the circumstances, defendants' Donovan's and Freeman's application of a policy requiring plaintiff to take his attorney phone call in their presence was reasonably related to legitimate penological interests and therefore valid under Turner. Because plaintiff's claims against defendants Donovan and Freeman are defective, so is his claim against defendant Bartow, which was a claim for Bartow's "failure to train" defendants Freeman and Donovan to prevent constitutional violations. Defendants' motion for summary judgment will be granted in full. Because I have concluded that no constitutional violation occurred, I need not consider defendants' argument that they are entitled to qualified immunity.

12

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, dkt. #38, is GRANTED.

2. The clerk is directed to enter judgment for defendants and close this case.

Entered this 16th day of December, 2008.

                BY THE COURT:

                /s/

                _____
                BARBARA B. CRABB
                District Judge